# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

JAMES BAXTON AND ROSALYNN PETTWAY,

          Plaintiffs,

    -vs-

DALE ARTUS *Superintendent*, KAREN CROW-LEY *Deputy Superintendent of Programs*, THOMAS J. STICHT Deputy *Superintendent of Security*, SGT. BARKER *Corrections Sergeant*, S. MILLER *Corrections Officer*, N. SWITZER *Corrections Officer*, C.O. WOODS *Corrections Officer*, *In their individual and official capacities*,

          Defendants.

DECISION & ORDER

13-CV-6635

## APPEARANCES

| | |
|---|---|
| For Plaintiff Baxton: | James Baxton, pro se<br>95-A-3238<br>Southport Correctional Facility<br>Box 2000<br>Pine City, NY 14871-2000 |
| For Plaintiff Pettway: | Rosalynn Pettway, pro se<br>399 Central Avenue #2C<br>Brooklyn, NY 11221 |
| For Defendants: | Gary M. Levine, A.A.G.<br>New York State Office of the Attorney General<br>144 Exchange Boulevard, Suite 200<br>Rochester, NY 14614<br>(585) 546-7430 |

## INTRODUCTION

**Siragusa, J.** Plaintiffs James Baxton ("Baxton") and Rosalynn Pettway ("Pettway") filed a complaint alleging constitutional violations under 42 U.S.C. § 1983, and Amendments I and XIV of the United States Constitution. Compl., Nov. 27, 2013, ECF No. 1. Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Notice of Motion, Jun. 26, 2014, ECF No. 6. For the reasons detailed below, Defendants' application is granted.

## FACTUAL BACKGROUND

The Court takes the following facts from the complaint, which the Court assumes to be true for the purposes of its motion analysis. Paragraphs 1 through 15 of the complaint contain the allegations against Defendants. In a decision granting Plaintiffs *in forma pauperis* status, the Honorable Michael A. Telesca summarized the allegations as follows:

> The complaint alleges that the constitutional rights of the plaintiffs were violated when corrections officials at Wende Correctional Facility retaliated against inmate Baxton for filing grievances against defendant Miller. Plaintiff Baxton lost certain privileges for a period of time, including some relations with the outside world, which deprived him and his fiancé, Ms. Pettway, of association. The complaint also alleges that Mr. Baxton's due process rights were violated by denying him a fair and impartial disciplinary hearing and that defendants Artus and Sticht failed to remedy that denial of due process upon being informed of it through a request for discretionary review.

Order at 2, Mar. 27, 2014, ECF No. 4. Baxton contends that he filed a grievance against Correctional Officer Miller ("Miller") on July 5, 2012, for "illegally depriving Plaintiff access to the 'PHONE HOME PROGRAM.'" Compl. ¶ 1, Nov. 27, 2013, ECF No. 1. Baxton filed a second grievance against Miller for the same issue on July 7, 2012, alleging

that the second deprivation was in retaliation for Baxton's grievance filed on July 5. Baxton asserts that the

> "PHONE HOME PROGRAM" is a program designed to aid prisoners in strengthening family ties. Illegally depriving Plaintiff access to the "PHONE HOME PROGRAM" divested Plaintiff as well as family membars [sic] and fiancé, Ms. Pattway [sic], access to (1) strength their ties and, (2) aid in the rehabilitation of Plaintiff.

Compl. ¶ 1.

Plaintiffs set forth four causes of action in their complaint: (1) alleging that Miller fabricated a misconduct report regarding lewd behavior which caused Baxton's safety to become a concern; (2) alleging a denial of due process in the Tier III disciplinary hearing conducted by Deputy Superintendent of Programs Crowley ("Crowley"); (3) alleging that Superintendent D. Artus ("Artus") and Deputy Superintendent of Security Sticht ("Sticht") denied Baxton due process by failing answer his request for a discretionary review of his disciplinary hearing; and (4) alleging that Correctional Officer Wood ("Wood") falsified drug charges against Baxton which placed an added strain on the intimate relationship between Plaintiffs.[1] As a result of the allegedly false claims and failure to conduct a discretionary review, Baxton maintains that he was disqualified from programs that would have allowed him to earn "good time" for an earlier release.

## STANDARD OF LAW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[1] Plaintiffs' complaint contains two sets of facts labeled as causes of action. The Court interprets the first set to be the actual causes of action, while the second set details damages arising from Defendants' allegedly unconstitutional conduct. Defendants have, however, addressed both the "Counts" and the "Causes of Action" separately, which the Court will address below.

(*Twombly* holding applies to all complaints, not just those sounding in antitrust). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While pro se complaints must contain sufficient factual allegations to meet the plausibility standard, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), we look for such allegations by affording the litigant "special solicitude, interpreting the complaint to raise the strongest claims that it suggests," *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and alterations omitted).

**ANALYSIS**

Applying the requirement in *Hill*, cited above, the Court construes Plaintiffs' first cause of action to encompass a First Amendment claim for deprivation of the right to association. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18, 104 S. Ct. 3244, 3249, 82 L. Ed. 2d 462 (1984) ("In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme."). Further, the Court construes the complaint to raise a derivative claim of loss of consortium under New York State law.

Plaintiffs have not sufficiently alleged Baxton's constitutional rights have been deprived under 42 U.S.C. §1983 because, although there is a recognized First Amendment right to association, Baxton does not allege that he fully lost the ability to com-

4

municate. The Second Circuit addressed the right to communicate in *Patel v. Searles* 305 F.3d 130, 135 (2002), writing: "In *Roberts*, the Supreme Court addressed . . . freedom of intimate association. With regard to [freedom of intimate association], which is the one at issue in this case, the Supreme Court stated such a right is constitutionally protected 'as a fundamental element of personal liberty.'" *Patel*, 305 F.3d at 135 (citation omitted). But the liberty interest in communication is not absolute:

> Prison regulations imposing restrictions on inmate phone calls have generally been upheld because the restrictions have been interpreted as furthering a legitimate penological interest. However, in those circumstances where telephone restrictions have been upheld, the Courts have usually noted that the affected inmates have alternate means of communicating with the outside world, most often by use of the mail. *See, e.g.*, *Rivera v. Senkowski*, 62 F.3d 80 (2d Cir. 1995); *Acosta v. Brady*, [No. CIV.A. 96-2874,] 1999 WL 158471, *7 (E.D .Pa. March 22, 1999).

*Pitsley v. Ricks*, No. 96-CV-0372NAMDRH, 2000 WL 362023, *5. Plaintiffs' allegations do not meet the legal requirements for deprivation of constitutional protected associational rights because he failed to allege that he had no other means of communication outside of the PHONE HOME PROGRAM. Baxton sufficiently alleges that Miller allegedly retaliated against him, and that the retaliation barred phone communication between himself and Pettway (Baxton's fiancé). However, Baxton had recourse by other means, such as through the mail, to maintain associational rights. This precludes relief; thus, the first cause of action is dismissed as to Miller.

Plaintiffs also allege in the first cause of action that Baxton "wrote numerous complaints about this fabricated retaliatory report to" Commissioner B. Fischer ("Fischer"), Artus, Sticht, and Crowley. However, Plaintiffs failed to allege personal involvement by these defendants. It is settled within the Second Circuit that, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)); see also *Colon v Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Richardson v Hillman*, 201 F.Supp.2d 222, 230 (S.D.N.Y.2002). "To survive a motion to dismiss, plaintiff must allege that the defendants were directly involved in the alleged violations of plaintiff's constitutional rights." *Torres v Berbary*, 246 F. Supp. 2d at 338–339. Since Plaintiffs have failed to do so, the first cause of action is dismissed as to the remaining defendants: Dale Artus; Karen Crowley; Thomas J. Sticht; Sgt. Barker; S. Miller; Nadine Switzer; and C.O. Woods.[2]

The Court next turns to the second cause of action, a claim that Baxton did not receive due process at the Tier III disciplinary hearing. Plaintiffs allege that Baxton had his due process rights abridged by Crowley when she failed to dismiss the misconduct charge and only reduced it from lewd conduct to creating a disturbance. As this Court observed in *Phillips v. Goord*, No. 08-CV-0957A(F), 2009 U.S. Dist. LEXIS 29322 (W.D.N.Y. Mar. 31, 2009):

> In *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. n6 "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence impose by a court of law," 515 U.S. at 485, and it is only where the prisoner's conditions of disciplinary confinement become an atypical and significant hardship based on a liberty interest created by state law that federal due process standards must be met.
>
> FN6 *Sandin* compared inmates in the SHU for disciplinary purposes to inmates in both the general inmate population and those in administrative segregation and protective custody. 515 U.S. at 485-86. Based on that comparison, the Court held that the plaintiff's 30-day SHU punishment did not "work a major disruption in his environment," *id*. at 486, and was "with-

---

[2] No first names are listed for Sgt. Barker, S. Miller, or Woods.

in the range of confinement to be normally expected for one serving an in-
determinate term of 30 years to life," *id.* at 487.

*Phillips*, 2009 U.S. Dist. LEXIS 29322, 21-22. Baxton was given a Tier III hearing where

he had the opportunity to introduce allegations of retaliatory actions being taken against

him by Miller. Due process rights do not ensure that an individual will have an uncondi-

tional right to prevail. Rather due process creates the opportunity to see the charge and

the evidence against an individual. Whether or not Crowley found the evidence of retali-

atory actions compelling or not is beyond the scope of due process rights. Accordingly,

Plaintiffs' second cause of action is dismissed.

In the third cause of action, Plaintiffs allege that Artus and Sticht failed to ensure

Baxton received due process in the discretionary review process. Salient to whether the

claims against Artus and Sticht should be dismissed, is the issue of inmate's due pro-

cess rights. In this regard, the Court agrees with Defendants and finds that Baxton does

not plead a plausible claim against either Artus or Sticht, since there is no constitutional

right of discretionary review. "A constitutional entitlement cannot 'be created—as if by

estoppel—merely because a wholly and *expressly* discretionary state privilege has been

granted generously in the past." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S.

458, 465 (1981) (quoting *Leis v. Flynt,* 439 U.S. 438, 444 (1979)). In order to show that

a liberty interest has somehow been created with respect to discretionary review, Plain-

tiffs must "show—by reference to statute, regulation, administrative practice, contractual

arrangement or other mutual understanding—that particularized standards or criteria

guide the State's decisionmakers." *Id.* at 467. (Brennan, J., concurring). The New York

State rule that outlines discretionary review states in full: "At any time during which a

penalty imposed pursuant to a disciplinary hearing is in effect, the superintendent may

7

reduce the penalty." 7 N.Y.C.R.R. § 253.9. Since there is no guarantee that a penalty will be reduced, the expectation that there will be a discretionary hearing does not create a constitutional right. Therefore, Plaintiffs' third cause of action is dismissed.

Contained in the fourth cause of action are allegations that Wood filed a false misconduct report. "The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process, *see Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)." *Faison v Janicki*, No. 03-CV-6475L, 2007 WL 529310, *4 (W.D.N.Y. Feb. 14, 2007). Plaintiffs fail to make a constitutional claim merely by alleging the filing of a false misconduct report. Wood's intent is not relevant because a misconduct report, in and of itself, is not sufficient to form the basis of a constitutional claim. Thus, the fourth cause of action against Wood is dismissed.

The Court now turns to Plaintiffs' loss of consortium claim as to Pettway. Although the Second Circuit has not ruled on a loss of consortium claim under §1983, all four New York district courts have. The district courts do not recognize the loss of consortium under §1983. *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 292 (S.D.N.Y. 2005) ("§1983 does not support derivative claims for loss of consortium."); *Juncewicz v. Patton*, No. 01-CV-0519, 2002 U.S. Dist. LEXIS 22651, at *9 (W.D.N.Y. Oct. 8, 2002); Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998) ("Loss of consortium is not an independent cause of action, but is derivative…Second, section 1983 does not support a derivative claim for loss of consortium."); *Kirton v. Hassel*, No.96-CV-1371, 1998 U.S. Dist. LEXIS 6535, at *28 (E.D.N.Y. March 25, 1998) (citing *Stanley v. City of New York*, 587 F. Supp. 393, 396 (E.D.N.Y. 1984)) ("Loss of consortium, howev-

er, is a state law claim which does not rise to the level of constitutional violation."). In keeping with the Second Circuit district courts, the Court does not find the loss of consortium claim valid under §1983, thus dismissing Plaintiffs claim.

To the extent that Plaintiffs are pleading a state law claim as to loss of consortium, the Court, having "dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3) (2015), declines to exercise supplemental jurisdiction over any state law claims Plaintiffs may have raised in the complaint, including loss of consortium.

In addition to the four causes of action described above, Defendants also move to dismiss all claims against them in their official capacities. That motion is granted based on the State's sovereign immunity, as recognized by the Eleventh Amendment. *Pennhurst State SCH. and Hosp. v. Halderman*, 465 U.S. 89 (1984). Further, Defendants move to dismiss the claim of conspiracy against Miller and Swtizer. Plaintiffs have failed to allege a plausible claim of conspiracy. Further, the Court agrees that defamation claims are not properly raised under § 1983. *See McZorn v. Johnson City Police Dep't*, No. 3:08-CV-0726, 2009 U.S. Dist. LEXIS 121232, *12–*13 (N.D.N.Y. Dec. 30, 2009) ("Generally, defamation is not actionable under 42 U.S.C. § 1983. *See Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) (holding that damage to one's reputation is not by itself sufficient to invoke the procedural protection of the Due Process Clause so as to give rise to a § 1983 claim.)"). The Court has reviewed the remaining claims construed by Defendants and finds no plausible claims have been raised.

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 6, is granted. The Clerk is directed to enter judgment for Defendants dismissing all Federal claims against them. In addition, the Court declines to exercise jurisdiction over any State claims raised in the complaint.

IT IS SO ORDERED.

DATED:     December 14, 2015
           Rochester, New York

/s/ Charles J. Siragusa<br>
CHARLES J. SIRAGUSA<br>
United States District Judge